UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NURIS DEL CARMEN FERNANDEZ,
                              Plaintiff,

                    -v-

NANCY A. BERRYHILL,
*Acting Commissioner of Social Security*,
                              Defendant.

18-CV-326 (JPO)

<u>OPINION AND ORDER</u>

J. PAUL OETKEN, District Judge:

Plaintiff Nuris Del Carmen Fernandez brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits. Fernandez and the Commissioner have cross-moved for judgment on the pleadings. (Dkt. Nos. 9 & 13.) For the reasons that follow, Fernandez's motion is granted and the Commissioner's motion is denied.

I.      **Background**

        A.      **Factual Background and Medical History**

Plaintiff Nuris Del Carmen Fernandez was born in 1964 (Dkt. No. 8 ("R.") 351), and she has an eleventh-grade education (R. 370). She has been in the United States for over twenty years and passed the U.S. citizenship test sometime in 2015 or 2016. (R. 257–58, 273.) As of August 1, 2014—the date she stopped working due to disability—Fernandez was employed as a home attendant/home health aide. (R. 275, 351, 369–70.) She had also held prior jobs as a factory worker and hotel housekeeper. (R. 370, 385.) Fernandez professes to suffer from a number of medical conditions that limit her ability to work, including diabetes, leg pain, and issues with her heart. (R. 369.) However, the focus of this appeal is certain impairments relating to her mental health and cognitive functioning. (Dkt. No. 10 at 1 n.4.)

On December 19, 2013, Fernandez first sought mental health treatment from Catherine Roche, Ph.D., a psychologist at the New York Presbyterian Mental Health Clinic. (R. 407.) Dr. Roche initially diagnosed Fernandez with depressive disorder (*id.*), but in February 2014 revised her diagnosis to depressive disorder and anxiety disorder (R. 404). Fernandez was subsequently evaluated by a psychiatrist, Jose Genua, M.D., on May 7, 2014. (Dkt. No. 10 at 2 n.5; R. 399.) Dr. Genua also diagnosed depressive disorder, and prescribed Escitalopram. (R. 400–01.)

Fernandez regularly consulted Dr. Roche from July 2014 until June 2015, during which time Dr. Roche consistently listed her "diagnostic impression" of Fernandez as "major depressive disorder." (R. 396–98, 570, 573, 579, 585, 589, 603–05, 610, 613, 619.)[1] During this period, Dr. Roche began to note that Fernandez was experiencing issues with memory and cognitive functioning, and added to her diagnosis "cognitive disorder NOS."[2] (*See, e.g.*, R. 603–05, 610.) On October 27, 2014, Dr. Roche wrote a letter stating that Fernandez's "symptoms are significant that would impair work functioning," specifying that her "cognitive disorder functions consist of memory loss and disorganization." (R. 521.) In a subsequent letter on November 13, 2014, Dr. Roche noted that Fernandez had scored in the "Mild Cognitive Impairment" range on a mental health examination and exhibited memory impairment and confusion. (R. 524.)

During her treatment by Dr. Roche, Fernandez was also a patient of Mencia Gomez De Vargas, M.D., a specialist in psychosomatic medicine at Centro Medico Dominicano. (Dkt. No. 10 at 4 & n.7.) Dr. Gomez De Vargas began treating Fernandez on July 16, 2014, at which time

---

[1]     Fernandez also visited Giselle Rosado, a social worker at New York Presbyterian, for counseling during this period. (R. 540–41, 555–56, 571, 573–74, 589–90, 611–12.)

[2]     "NOS" means "not otherwise specified." (Dkt. No. 14 at 3.)

she diagnosed Fernandez with "persistent depressive disorder" (or "dysthymia") and prescribed medication.  (R. 668–70.)  Dr. Gomez De Vargas saw Fernandez for follow-up appointments in August, September, and October 2014, over which time her diagnosis remained consistent (R. 671–76), though Fernandez occasionally denied having "any psychiatric problems or symptoms," (R. 673, 675).

After a gap of a year, Fernandez returned to the Centro Medico Dominicano on November 17, 2015, with her treatment from this point forward consisting of therapy with Candida Cartegena, supervised by psychiatrist Fernando Taveras, M.D.  (Dkt. No. 10 at 5 & n.10; R. 678–79.)  At the initial therapy appointment, Fernandez was diagnosed as having dysthymic disorder with a global assessment of functioning (GAF)[3] score of 60.  (R. 679.) Fernandez attended regular therapy visits at Centro Medico Dominicano from November 2015 to December 2016, during which Fernandez was consistently diagnosed as having dysthymic disorder and a GAF score of 60.  (R. 679–707.)

In a mental impairment questionnaire dated January 5, 2017, Dr. Taveras stated his diagnosis that Fernandez suffered from dysthymic disorder, with a GAF score of 60.  (R. 710.) Dr. Taveras listed Fernandez's symptoms as including difficulty concentrating and memory problems, and indicated that she had "[m]oderate-to-marked" and "[m]arked" limitation in various activities related to "Understanding and Memory" and "Concentration and Persistence," and "[m]oderate" limitations in the category of "Social Interactions."  (R. 711–13.)

In addition to her treating physicians, on October 22, 2014 Fernandez was evaluated by psychologist Lauren Feiden, Psy.D., at the direction of the Social Security Administration.  (Dkt.

---

[3]        A GAF score of 51 to 60 correlates to "moderate symptoms," or "moderate difficulty in social, occupational, or school functioning."  (Dkt. No. 14 at 9 n.3.)

No. 10 at 7; R. 509–13.) Dr. Feiden diagnosed Fernandez as having major depressive disorder, and noted that Fernandez was "markedly limited in her ability to maintain attention and concentration, learn new tasks, and perform complex tasks independently" as caused by "psychiatric symptoms and cognitive deficits." (R. 512.) Overall, Dr. Feiden concluded that the examination "appear[ed] to be consistent with psychiatric problems" which "may significantly interfere with the claimant's ability to function on a daily basis." (R. 512.) At the ALJ's direction, Dr. Feiden examined Fernandez again on October 10, 2016. (Dkt. No. 10 at 7; R. 647.) Dr. Feiden diagnosed unspecified depressive disorder and unspecified anxiety disorder, and again noted moderate to marked limitations in various areas. (R. 650, 652–53.)

On November 13, 2014, the medical evidence that had been submitted in support of Fernandez's application of disability benefits to date was reviewed by V. Reddy, Ph.D., a state psychologist. (Dkt. No. 14 at 6; R. 288–91.) Dr. Reddy concluded that Fernandez ranged from "not significantly limited" to only "moderately limited" on all categories of a "mental residual functional capacity assessment." (R. 289–90.)

On August 14, 2017—after the ALJ denied her application—Fernandez was evaluated by psychologist Patricia Galiotos, Psy.D. (Dkt. No. 10 at 8; R. 115–18.) After reviewing medical records and conducting a mental status exam, Dr. Galiotos diagnosed Fernandez with severe persistent depressive disorder and unspecified major neurocognitive disorder. (R. 116–18.) In a mental impairment questionnaire dated September 5, 2017, Dr. Galiotos reported that Fernandez exhibited issues with memory and thinking or concentrating, as well as a loss of intellectual ability, and various limitations of mental activities. (R. 120, 122.)

## B.    Procedural History

Fernandez filed an application for Social Security disability benefits on September 4, 2014, alleging disability beginning August 1, 2014.  (R. 351.)  Her application was denied on November 14, 2014.  (R. 295.)  Fernandez requested a hearing, and an administrative law judge ("ALJ") conducted a hearing on January 18, 2017.  (R. 255, 301–02.)

At the hearing before the ALJ, Fernandez testified with the aid of a Spanish interpreter.  (R. 258.)  Fernandez answered questions about her physical health problems and about her mental and emotional health.  (R. 259–60, 268–72.)  She described feeling "always depressed" and "always tired," and indicated having difficulty concentrating and remembering things.  (R. 261–62.)  Fernandez also answered questions about her habits and average daily activities.  (R. 263–68, 273.)

A vocational expert, Melissa Fass-Karlin, also testified at the hearing.  (R. 17, 275.)  She opined that an individual capable of performing a medium level of physical exertion, limited to "simple, routine, repetitive type tasks," and without fluency in English could perform work as a cleaner, kitchen helper, or cook helper.  (R. 276–77.)  Karlin further testified that such jobs would allow only "[u]p to 5%" time off task, and one unscheduled absence per month.  (R. 277.)  In response to questioning, Karlin opined that an individual who was "unable to work in coordination with others" or had "marked limitation . . . with the ability to respond appropriately to changes in the workplace" would not be able to maintain unskilled work.  (R. 279.)

On February 16, 2017, the ALJ denied Fernandez's application, concluding that Fernandez is not disabled within the meaning of the Social Security Act ("SSA").  (R. 11, 17.)[4]

---

[4]    The ALJ followed the Social Security Administration's five-step process for determining whether an individual is disabled under the SSA.  (R. 18–19.)  Because only certain aspects of that process are at issue in this appeal—the determination of Fernandez's "residual

The ALJ found that Fernandez has a number of severe impairments, including recurrent major depressive disorder, dysthymic disorder, and mild cognitive disorder. (R. 19.) However, the ALJ found that Fernandez retained the "residual functional capacity to perform medium work . . . restricted to jobs involving simple, routine, repetitive type tasks and requiring only occasional contact with supervisors, coworkers and the public and also not requiring fluency in English." (R. 22.) Based on these findings, the ALJ concluded that Fernandez was unable to perform her past work as a home health aide (R. 28), but was capable of performing other work as a cleaner, kitchen helper, or cook helper (R. 29–30).

Fernandez requested review of the ALJ's decision, submitting new evidence in the form of Dr. Galiotos's report to support her application. (R. 346, 393–94.) The Social Security Appeals Council refused to consider the new evidence and denied the request for review on November 15, 2017. (R. 1–2.) Fernandez filed this suit on January 12, 2018. (Dkt. No. 1.)

## II.     Legal Standard

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court may not substitute its judgment for the Commissioner's "even if it might justifiably have reached a different result upon *de novo* review." *Downes v. Colvin*, No. 14 Civ. 7147, 2015 WL

---

functional capacity" and whether she is able to perform any other work in light of that capacity and relevant personal factors (R. 22–30)—the remaining portions of the ALJ's determination will not be discussed in detail here.

4481088, at *6 (S.D.N.Y. July 22, 2015) (quoting *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011)). Accordingly, this Court determines only whether the ALJ's decision was based on sufficient evidence and applied proper legal standards. The Court does not decide whether Fernandez is in fact disabled.

## III. Discussion

Fernandez contends that the review of her application for disability benefits was flawed in three respects: (1) the ALJ failed to properly weigh medical opinion evidence; (2) the ALJ failed to properly evaluate Fernandez's testimony; (3) the Appeals Council impermissibly declined to consider new medical evidence. In support of its cross-motion for judgment on the pleadings, the Commissioner counters that the ALJ's decision was supported by substantial evidence and attempts to refute the three arguments raised by Fernandez. The Court addresses each argument in turn.

### A. Framework for Disability Claims

To establish a disability under the SSA, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability at issue must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration employs a five-step procedure to analyze disability determinations. The Commissioner considers whether: (1) the claimant is currently engaged in

substantial gainful activity; (2) the claimant has a "severe" impairment as defined in Social

Security Administration's regulations; (3) the claimant has an impairment listed in Appendix I of

the regulations; (4) the claimant has a residual functional capacity to perform her past work; and

(5) there is other work the claimant could perform. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.

1999) (Sotomayor, J.); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden

of proof at the first four steps; the Commissioner bears the burden at the final step. *Rosa*, 168

F.3d at 77. In conducting its analysis, the ALJ has an affirmative duty to "develop the record."

*Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (citing *Pratts v. Chater*, 94

F.3d 34, 37 (2d Cir. 1996)).

### B.     Medical Opinion Evidence

Fernandez first argues that the ALJ erred by giving improper weight to certain medical

opinion evidence in determining her residual functional capacity ("RFC"). (Dkt. No. 10 at 11–

18.) Specifically, Fernandez challenges the ALJ's decision to afford "no weight" to the opinion

of Dr. Taveras, only "moderate weight" to the opinion of Dr. Feiden, and "great weight" to the

opinion of a "non-examining state agency psychologist"—Dr. Reddy. (Dkt. No. 10 at 12.)

### 1.     Dr. Fernando Taveras

In providing an overview of the medical evidence in this case, the ALJ's determination

summarized the treatment records from Fernandez's therapy with Candida Cartagena (supervised

by Dr. Taveras), and Dr. Taveras's January 2017 assessment report. (R. 25.) The ALJ observed

a "stark contrast between the findings in [Taveras's January 2017] assessment and his treatment

notes detailed above." (R. 25.) Later in the determination, in explaining how much weight to

afford the various medical opinions, the ALJ again noted "how [Taveras's] assessment"—that

Fernandez exhibited "persistent depressed mood" and "difficulty thinking or concentrating"—

"contrasted greatly with his treatment . . . which showed only occasional depressive and anxiety

symptoms." (R. 27.) The ALJ also noted how Dr. Taveras's "treatment notes showed a global assessment of function (GAF) of 60 (moderate symptoms) which is inconsistent with his medical source statement." (*Id*.) The ALJ thus concluded that Dr. Taveras's "opinion is given no weight." (*Id*.)

Fernandez objects to this treatment of Dr. Taveras's medical opinion on two bases: (a) the failure to afford his opinion "controlling weight" due to inconsistencies between his medical opinion and his treatment notes; and (b) the failure to consider required factors in determining how much weight to afford the opinion.

### a. Failure to Afford Opinion Controlling Weight

In support of her argument that the ALJ impermissibly disregarded the opinion of Dr. Taveras, Fernandez invokes the "treating physician rule," which binds ALJs in making disability benefit determinations. *Kessler v. Colvin*, No. 14 Civ. 8201, 2015 WL 6473011, at *4 (S.D.N.Y. Oct. 27, 2015). The rule mandates that "[t]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106–07 (2d Cir. 2003) (holding that an ALJ erred in not giving a treating physician's diagnosis of fibromyalgia controlling weight). "The reason for this rule is that treating physicians offer a 'unique perspective to the medical evidence' that cannot otherwise be obtained from the record." *Mancebo v. Comm'r of Soc. Sec.*, No. 16 Civ. 6400, 2017 WL 4339665, at *3 (S.D.N.Y. Sept. 29, 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

The Commissioner contends that the ALJ "properly gave [Dr. Taveras's] opinion no weight, as it was inconsistent with the therapy notes from his own clinic . . . and the treatment notes from Plaintiff's other providers." (Dkt. No. 14 at 18–19.) The Commissioner is incorrect, however, to the extent she characterizes the ALJ as relying on the latter of these two reasons. Although the ALJ's reasoning is not comprehensively presented, the ALJ apparently decided not to give Dr. Taveras's opinion controlling weight solely because his "assessment contrasted greatly with his treatment [notes]," and specifically that "his treatment notes showed" a GAF score "which is inconsistent with his medical source statement." (R. 27.) The ALJ did observe earlier in the determination that there was a "contrast between the findings in treatment notes from Centro Medico Dominican, which showed waxing and waning depressive and anxiety symptoms with no concentration deficits, and treatment notes from the [New York Presbyterian clinic], which showed persisting depressive symptoms and poor immediate memory." (R. 25.) But the ALJ did not opine that Dr. Taveras's ultimate *opinion* was inconsistent with the notes from the New York Presbyterian clinic. Indeed, the ALJ could not have done so, because the upshot of the ALJ's observations is that Dr. Taveras's opinion was arguably *more* consistent with the notes from the New York Presbyterian clinic than his own treatment notes. [5]

The only reason the ALJ actually gave for discounting Dr. Taveras's opinion was its alleged inconsistency with Dr. Taveras's own treatment notes. (R. 27.) In making this

_____

[5] The ALJ could have relied on any other inconsistencies between Dr. Taveras's opinion and the observations and opinions of other physicians to attempt to support a decision to discount the weight of Dr. Taveras's opinion. *See Burgess*, 537 F.3d at 128 (noting that an ALJ need not give a treating physician opinion controlling weight where it is "inconsistent with the other substantial evidence in the case record" (brackets omitted)). But the ALJ did not do so here, and the Court may not "affirm an administrative action on grounds different from those considered by the agency." *Estrella o/b/o M.R.E. v. Berryhill*, No. 15 Civ. 6966, 2017 WL 2693722, at *23 (S.D.N.Y. June 22, 2017) (quoting *Burgess*, 537 F. 3d at 128).

observation, the ALJ was indicating that Dr. Taveras's opinion was "inconsistent with the other substantial evidence in [the] case record," *Burgess*, 537 F.3d at 128, the other "substantial evidence" being Dr. Taveras's own treatment notes.

However, such evidence is insufficient on its own to permit an ALJ to decline to give controlling weight the opinion of a treating physician. The Second Circuit has held that an ALJ "err[s] in rejecting the opinions of [treating] physicians solely on the basis that the opinions allegedly conflicted with the physicians' own clinical findings." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998). More recently, the Circuit reaffirmed in a summary order that "an ALJ may not reject a treating physician's disability opinion based 'solely' on internal conflicts in that physician's clinical findings." *Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010) (quoting *Balsamo*, 142 F.3d at 80).

None of the cases cited by the Commissioner are to the contrary. (Dkt. No. 14 at 19.) Rather, they stand for the proposition that an ALJ may reject a treating physician's opinion where it is inconsistent with the physician's own notes *and* conflicts with other evidence in the record. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (rejecting physician's opinion because it was "contrary to his own treatment notes" and "refuted by" evidence of the claimant's "recreational activities"); *Legg v. Colvin*, 574 F. App'x 48, 49 (2d Cir. 2014) (citing inconsistencies with a doctor's "own treatment notes" as one factor—in addition to conflicts with "the objective medical evidence" and "the reports of other physicians"—that collectively justified discounting opinion of treating physician).

Here, the only reason given by the ALJ for declining to give Dr. Taveras's opinion controlling weight, as required by 20 C.F.R. § 404.1527(c)(2), is the opinion's inconsistency

with Taveras's own findings in his treatment notes. (R. 27.) Because that is an inadequate basis for rejecting a treating physician's medical opinion, remand is required to correct this error.[6]

### b. Failure to Consider Required Factors in Determining Weight

Fernandez also contends that the ALJ failed to consider the required factors in deciding to afford Dr. Taveras's opinion no weight. (Dkt. No. 10 at 16–17.) If an ALJ decides not to give controlling weight to a treating physician's assessment, the ALJ must consider the following factors to determine how much weight to give the opinion:

> (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors.

*Monroe*, 676 F. App'x at 7 (citing 20 C.F.R. § 404.1527(c)). After considering these factors, the ALJ must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Id.* (quoting *Burgess*, 537 F.3d at 129). "Failure to provide such good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Byrne v. Berryhill*, No. 18-622, 2019 WL 495133, at *1 (2d Cir. Feb. 8, 2019) (summary order) (quoting *Burgess*, 537 F.3d at 129–30).

Here, it is not clear that the ALJ considered the relevant factors, and he failed to comprehensively set forth good reasons for not crediting Dr. Taveras's opinion. The ALJ mentioned the length of treatment and the nature of the treatment relationship in giving a summary of medical evidence (R. 25), but he gave no indication why those important

---

[6] The bulk of the parties' arguments regarding the treating physician rule focus on whether the ALJ's finding—that Dr. Taveras's opinion was inconsistent with his treatment notes and GAF scores—is supported by substantial evidence, particularly given the nature of psychiatric diagnosis. (Dkt. No. 10 at 12–14; *see* Dkt. No. 14 at 19–21.) However, because the ALJ erred on a more fundamental basis, the Court need not address these arguments.

considerations did not affect his decision to give no weight to Dr. Taveras's opinion. Nor did the ALJ ever acknowledge the extent to which the opinion was consistent with the record as a whole, the significance of Dr. Taveras's status as a specialist, or the unique nature of psychiatric diagnosis. Instead, the ALJ's determination briefly notes an apparent internal inconsistency between Dr. Taveras's own treatment notes and his ultimate opinion, and concludes: "This opinion is given no weight." (R. 27.)

The Commissioner is correct that an "ALJ need not 'slavishly recite . . . each and every factor where the ALJ's reasoning and adherence to the regulation are clear.'" *Batchelor v. Berryhill*, No. 18 Civ. 1424, 2019 WL 422527, at *4 (S.D.N.Y. Feb. 4, 2019) (brackets omitted) (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). But in this instance, the "reasoning and adherence to the regulation" are not clear.

The Court thus concludes that the ALJ's apparent failure "to consider the statutory factors" and failure to "provide 'good reasons' for assigning" no weight to Dr. Taveras's opinion "contravene[] the regulations and requires remand." *Byrne*, 2019 WL 495133, at *2.

### 2.      Dr. V. Reddy

Next, Fernandez challenges the ALJ's reliance on the opinion of Dr. V. Reddy, a non-examining psychologist. (Dkt. No. 10 at 14–15.) Describing Dr. Reddy as a "state agency psychological consultant," the ALJ noted that Dr. Reddy "found that claimant has only moderate functional limitations indicating claimant can do simple work." (R. 28.) The ALJ decided to give Dr. Reddy's assessment "great weight, as it is consistent with evidence of impaired attention, concentration and memory, as well as a lack of motivation to interact socially, but an inability to be cooperative and relate adequately, support a conclusion the claimant's ability to complete tasks and interact with others detailed above [*sic*]." (R. 28.) The ALJ gave Dr. Reddy's opinion greater weight than the opinion of any other physician. (R. 27–28.)

Fernandez contends that the ALJ's decision to rely on Dr. Reddy's assessment is contrary to relevant regulations and case law. (Dkt. No. 10 at 14.) The relevant regulations provide that ALJs generally "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]," and generally "give more weight to medical opinions from [] treating sources." 20 C.F.R. § 404.1527(c)(1)–(2). And courts in this Circuit routinely indicate that non-examining and non-treating physicians should be generally given less weight. *See, e.g.*, *Byrne*, 2019 WL 495133, at *1 ("[W]e have cautioned that 'ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013))); *Brown v. Comm'r of Soc. Sec.*, No. 06 Civ. 3174, 2011 WL 1004696, at *4 (E.D.N.Y. Mar. 18, 2011) ("The ALJ's heavy reliance on [the SSA physician's] testimony also contravened the clear guidance of SSA regulations, as [the physician] was a nonexamining source whose opinions are to be accorded less weight than those of examining sources and especially treating sources.").

Fernandez further contends that reliance on Dr. Reddy's assessment was particularly inappropriate here, given that Dr. Reddy's opinion was based on review of a near-empty treatment record, and the nature of the psychiatric treatment and diagnoses make in-person examination uniquely valuable. (Dkt. No. 10 at 15–16.) The Commissioner responds that that ALJ compensated for any gaps in Dr. Reddy's review by adequately considering the rest of the evidence in the record. (Dkt. No. 14 at 22.) But the ALJ himself did not offer this justification in relying on Dr. Reddy's opinion. As particularly relevant to Fernandez's argument here, the court notes the importance of the ALJ's "duty to adequately explain his reasoning in making the findings on which his ultimate decision rests." *Calzada v. Asture*, 753 F. Supp. 2d 250, 269

(S.D.N.Y. 2010).  It is crucial "that a determination by the ALJ must contain a sufficient explanation of her reasoning to permit the reviewing court to judge the adequacy of her conclusions."  *Pacheco v. Barnhart*, No. 03 Civ. 3235, 2004 WL 1345030, at \*4 (E.D.N.Y. June 14, 2004) (brackets and citation omitted).

In a similar case where the disability at issue involved mental health, Magistrate Judge Dolinger reviewed the determination of an ALJ that credited the opinion of a non-examining physician over that of treating physicians.  *Rodriguez v. Astrue*, No. 07 Civ. 534, 2009 WL 637154, at \*26 (S.D.N.Y. Mar. 9, 2009).  Judge Dolinger concluded that the findings of the non-examining physician "should have been discounted or addressed with some s[k]epticism because they were largely inconsistent with the examining physicians' findings and did not account for the 'subjective nature of the patient's disease.'"  *Id.* (citation omitted).  But because the ALJ failed to do so, failed "to explain why the medical evidence dictated a different result," and "failed to give 'good reasons' for adopting the non-examiner's conclusions," *id.*, Judge Dolinger recommended remanding the case.

Similarly here, the ALJ did not adequately explain his decision to give "great weight" to the opinion of Dr. Reddy, particularly in light of several significant factors that counseled against significantly relying on that opinion, including:  Reddy's status as a consultant who did not personally examine Fernandez, given the relevant regulations about the relative of such opinions; Reddy's review of only a small portion of the treatment record; the conflicts between Reddy's opinion and the opinions of treating physicians; and the importance of in-person examination in the assessment of mental health limitations.  Given these countervailing considerations, the ALJ's statement that Dr. Reddy's assessment was "consistent" with uncited evidence in the record constitutes an insufficient explanation of the reasoning by which he gave

the opinion "great weight." Accordingly, remand is warranted for the ALJ to revisit his decision to give the opinion of Dr. Reddy "great weight."

### 3. Dr. Lauren Feiden

Finally, Fernandez objects to the weight given by the ALJ to the opinions of Dr. Feiden. (Dkt. No. 10 at 17–19.) The ALJ acknowledged Dr. Feiden's opinion that Fernandez was "markedly limited in her ability to maintain attention and concentration, learn new tasks, and perform complex tasks independently," but observed that those findings of marked limitation "are contrary to reports that claimant was able to study for and pass her citizenship examination and that she could verbalize and repeat key points in a conversation." (R. 27–28.) The ALJ ultimately gave Dr. Feiden's opinion "moderate weight." (R. 28.)

Fernandez contends that this treatment of Dr. Feiden's opinion was flawed in two respects. First, Fernandez asserts that the ALJ erred in rejecting Dr. Feiden's opinion regarding marked limitations based on Fernandez's citizenship test. (Dkt. No. 10 at 17.) Fernandez argues that the ALJ was incorrect in relying on the fact that Fernandez "was able to study for" the citizenship test, because she specifically testified that she "didn't study" for the test. (Dkt. No. 10 at 17; R. 275.) However, Fernandez also testified that she *did* study for the citizenship test. The relevant passages of the transcript provide:

> Q. . . . Did you have to study for the citizenship test?
> A. Well, how could I say? I studied some and some other things I knew from school.
> . . .
> ALJ. Your psychiatrist said you had problems concentrating, but you were able to concentrate enough to study for the exam and you had enough concentration to take the exam. Is that correct?
> A. No. I didn't study. I studied but it was a coincidence. They questions they asked I knew. . . .

(R. 273–75.) Given this somewhat confusing testimony, it was reasonable for the ALJ to rely on the fact that Fernandez did at least some studying for the test and passed. Fernandez also argues

that the citizenship test is irrelevant to her ability to function in a work environment. (Dkt. No. 10 at 17.) But Fernandez offers no support for this proposition, and the ALJ could reasonably find that the ability to study for and pass a test is relevant to an individual's ability to maintain attention and concentration, and perform a complex task. Accordingly, the Court concludes that the ALJ did not err in partially discounting Dr. Feiden's testimony in this regard.

Second, Fernandez contends that the ALJ failed to properly consider other aspects of Dr. Feiden's opinion, specifically that Fernandez had moderate limitations in her ability to deal with stress, maintain a schedule, and make decisions. (Dkt. No. 10 at 17; R. 512, 650.) However, the ALJ specifically acknowledged these moderate limitations identified by Dr. Feiden in the determination. (R. 27.) And he later concluded that Dr. Feiden "noted moderate-to-marked limitations that do not prevent simple work." (R. 28.) The Court agrees with the Commissioner that this discussion adequately took account of these aspects of Dr. Feiden's opinion, and that the ALJ reasonably concluded that these limitations were consistent with a capacity to perform medium exertion unskilled work. (*See* Dkt. No. 14 at 21.) Accordingly, the Court rejects Fernandez's challenges to the ALJ's consideration of Dr. Feiden's medical opinion based on the record before the ALJ in February 2017.

* * *

Overall, the ALJ erred by discounting the opinion of treating physician Dr. Taveras on an improper basis, failing to consider required factors in deciding to give Dr. Taveras's opinion no weight, and failing adequately explain the great weight given to Dr. Reddy's opinion. The Court does not hold that Fernandez is disabled or that she is entitled to disability insurance benefits. The Court holds only that the case should be remanded to the Commissioner for further

proceedings that assign the proper weight to the various medical opinions of Fernandez's doctors and adequately explains the reasons for doing so.

### C. Claimant's Testimony

As an additional basis for remand, Fernandez contends that the ALJ failed to properly evaluate her testimony at the hearing.  (Dkt. No. 10 at 18–20.)[7]  In determining "whether a claimant who has a severe impairment nonetheless has the 'residual functional capacity' ('RFC') to perform work," an ALJ "is required to take the claimant's reports of pain and other limitations into account."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "carefully consider" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including "daily activities" and the "location, duration, frequency, and intensity of [their] pain or other symptoms."  20 C.F.R. § 404.1529(c)(3); *see* Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169–70 (Mar. 16, 2016).[8]  But in considering this evidence, the ALJ "is not

---

[7]     The Court notes that Fernandez does not appear to have raised this particular objection in her request to the Appeals Council for review of the ALJ's determination.  (R. 389–94.)  However, whether a claimant has "fully exhaust[ed] his administrative remedies before obtaining judicial review," is a "'waivable' — *i.e.*, prudential" element of "the right to appeal pursuant to § 405(g)."  *Adelman v. Berryhill*, 742 F. App'x 566, 571 (2d Cir. 2018) (alteration in original) (quoting *Smith v. Schweiker*, 709 F.2d 777, 780 (2d Cir. 1983)).  Because the Commissioner did not object to the consideration of this argument on the grounds of administrative exhaustion, the Court deems any such objection to be waived.

[8]     To the extent Fernandez argues that an ALJ commits reversible error by failing to expressly consider each of seven factors in determining whether to credit a claimant's testimony (Dkt. No. 10 at 20), the Court disagrees.  Consistent with the relevant regulations, an ALJ need consider only those factors on which claimant has offered evidence.  *See* 20 C.F.R. § 404.1529(c)(3) ("[W]e will carefully consider any other information you may submit about your symptoms."); SSR 16-3p, 81 FR 14166-01 at 14170 ("We will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms.  If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case.  We will discuss the factors pertinent to the evidence of record.").

required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Barry v. Colvin*, 606 F. App'x 621, 622–23 (2d Cir. 2015) (quoting *Genier*, 606 F.3d at 49).

"The ALJ must explain the decision to reject a claimant's testimony 'with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence.'" *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 743 (S.D.N.Y. 2018) (alterations in original) (quoting *Calzada*, 753 F. Supp. 2d at 280) (internal quotation marks omitted). The ALJ's determination regarding the claimant's credibility is entitled to deference. *See id.*

In addressing non-medical evidence of Fernandez's symptoms and limitations, the ALJ summarized her testimony at the hearing along with other evidence from the record. (R. 26–27.) Regarding Fernandez's testimony at the hearing, the ALJ ultimately concluded that

> [C]laimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. (R. 27.)

Fernandez objects to the ALJ's treatment of her testimony on two grounds. First, she contends that the ALJ failed to adequately explain why her testimony was not supported by the record. (Dkt. No. 10 at 19–20.) The Commissioner responds that the ALJ properly found Fernandez's statements to be inconsistent with the record, and the finding was supported by substantial evidence. (Dkt. No. 14 at 23–24.)

Looking to the language of the determination, the Court agrees with the Commissioner. As the ALJ went through and summarized the relevant non-medical evidence bearing on

Fernandez's symptoms, he repeatedly juxtaposed statements from Fernandez's testimony with references to other evidence in the record that was not wholly consistent with the testimony. (R. 26.)  For example, the ALJ noted that Fernandez "testified that she does not read or listen to the radio," but she had earlier indicated to a doctor that "[s]he can sustain concentration for watching television, listening to the radio, and reading."  (R. 26 (referencing R. 658).)  Similarly, Fernandez testified that she "does not cook," but had indicated to doctors that she "spends her days cooking."  (R. 26 (referencing R. 649); *see* R. 515.)  The ALJ also highlighted various instances in which Fernandez's statements at the hearing regarding her daily activities and accomplishments were internally inconsistent.  (R. 26–27.)  And he contrasted Fernandez's statements about physical limitations and pain with medical evidence in the record that he had discussed earlier in the determination.  (R. 26 (referencing discussion of musculoskeletal impairments on R. 23).)

Thus, when he concluded that "claimant's statements . . . are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (R. 27), the ALJ was referring to the inconsistencies apparent in that paragraph and the preceding paragraph.  The Court concludes that in highlighting those inconsistencies, often with citations to the record, the ALJ explained his decision to reject Fernandez's testimony "with sufficient specificity."  *Rousey*, 285 F. Supp. 3d at 743.  Furthermore, the Court concludes that the ALJ's decision not to fully credit those statements was an acceptable exercise of his discretion.

Second, Fernandez asserts that the ALJ erred by failing to explicitly weigh Fernandez's testimony regarding "her psychiatric symptoms" and "limited activities of daily living," which were the relevant factors raised by Fernandez to support the testimony about her symptoms and

limitations.  (Dkt. No. 10 at 20.)  The Commissioner counters that the ALJ adequately assessed Fernandez testimony regarding her daily activities.  (Dkt. No. 14 at 23–24.)

Again, the Court agrees with the Commissioner.  As an initial matter, the "failure to specifically reference" a particular relevant factor "does not undermine the credibility assessment if there is substantial evidence supporting the ALJ's credibility determination." *Rousey*, 285 F. Supp. 3d at 744 (brackets omitted) (second quoting *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011)).  Additionally, where it is "clear from the record that the ALJ was aware of" the factor because the ALJ "asked [claimant] about it at the hearing and relied on it in [the] disability determination," the failure to expressly weigh the factor separately is harmless.  *Id.*

Here, the ALJ expressly acknowledged Fernandez's testimony about her psychiatric symptoms in the determination—noting that she testified to being "always depressed and tired" and reported "difficulty concentrating and focusing, remembering, and being around people." (R. 26.)  The ALJ also noted Fernandez's testimony that "her psychiatric medications are sometimes helpful."  (*Id.*)  Additionally, the ALJ expressly discussed Fernandez's daily activities, including grooming, cooking, shopping, attending church, and visiting family.  (R. 26–27.)  And Fernandez identifies no other relevant evidence that she introduced but that the ALJ failed to assess in his determination.  (*See* Dkt. No. 10 at 20.)

Ultimately, the Court concludes that the ALJ did not err in his assessment of Fernandez's testimony, and remand on this particular ground is not warranted.

### D.  New Medical Evidence on Appeal

Finally, Fernandez contends that the Appeals Counsel erred in declining to consider new medical evidence submitted after the ALJ issued his determination.  (Dkt. No. 10 at 20–22.) Under the relevant Social Security regulations, "[t]he Appeals Council is obligated to consider 'new and material' evidence that 'relates to the period on or before the date of the administrative

law judge hearing decision.'"  *Patterson v. Colvin*, 24 F. Supp. 3d 356, 372 (S.D.N.Y. 2014)

(quoting 20 C.F.R. § 404.970(b)); *accord Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).  To be

"material," evidence must be "both relevant to the claimant's condition during the time period

for which benefits were denied and probative," and there must be "a reasonable possibility that

the new evidence would have influenced the [Commissioner] to decide claimant's application

differently."  *Patterson*, 24 F. Supp. 3d at 372 (alternation in original) (quoting *Lisa v. Sec'y of*

*Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991)).

 In denying Fernandez's request for review of the ALJ decision, the Appeals Council

declined to consider the new evidence submitted by Fernandez.  (R. 2.)  As to the report from Dr.

Galiotos's August 14, 2017 examination of Fernandez (R. 115–18), the Appeals Counsel stated

that it "does not relate to the period at issue" (R. 2).  With respect to the mental impairment

questionnaire from Dr. Galiotos (R. 119–23), the Appeals Counsel concluded that it "does not

show a reasonable probability that it would change the outcome of the decision" (R. 2).

 Fernandez contests the assertion that Dr. Galiotos's report "does not relate to the period

at issue," noting that Dr. Galiotos reviewed Fernandez's medical history and wrote a report that

was retrospective in nature.  (Dkt. No. 10 at 21.)  The Commissioner responds that Dr. Galiotos's

report was written upon examining Fernandez for the first time "six months after the end of the

relevant period," after review of "only some of Plaintiff's medical records," resulting in a report

that is "contradicted by extensive evidence in the record during the relevant period."  (Dkt. No.

14 at 24–25.)  But because the report discusses Fernandez's medial history and offers a

retrospective opinion, the Commissioner's concerns pertain to how much *weight* the doctor's

opinion should ultimately receive, not whether the evidence satisfies the threshold requirement

of pertaining to the relevant period.  *See Guile v. Barnhart*, No. 07 Civ. 259, 2010 WL 2516586,

at \*2 (N.D.N.Y. June 14, 2010) (holding that evidence is not relevant to the period of disability where it "provides only a snapshot of [claimant's] condition several months after the ALJ's decision, and does not . . .offer any retrospective opinion as to [claimant's] condition during the relevant period").

On the question of whether there was a "reasonable probability" that Dr. Galiotos's evidence would change the outcome of the ALJ's decision, Fernandez asserts that the new evidence "may well lead to a different decision by the ALJ once the entire record is considered." (Dkt. No. 10 at 22.)  The Court agrees.

The key question before the ALJ involved how to weigh various medical and non-medical evidence in determining Fernandez's RFC.  The ALJ ultimately gave "no weight" to the opinion of a treating psychiatrist, Dr. Taveras, and "great weight" to a non-examining state psychologist.  (R. 27–28.)  In deciding how to weigh these respective opinions, and the remainder of the medical opinions offered, the ALJ was required to evaluate the opinions against the background of the record as a whole.  *See, e.g.*, *Monroe*, 676 F. App'x at 7 (requiring ALJ to consider "the evidence in support of the opinion" and "the opinion's consistency with the record as a whole" in determining the weight to give to a treating physician's opinion).

In this context, an additional expert report supporting the conclusions of Dr. Taveras could have reasonably caused the ALJ to credit his opinion, which would have likely affected the ultimate conclusion regarding Fernandez's functional capacity.  And indeed, the report and mental impairment questionnaire completed by Dr. Galiotos are entirely consistent with Dr. Taveras's January 2017 assessment.  (*Compare* R. 119–23, *with* R. 710–714.)  Furthermore, Dr. Galiotos's evidence also supports the opinion of Dr. Feiden regarding Fernandez's marked limitations (*compare* R. 122, *with* R. 512), and contradicts aspects of Dr. Reddy's opinion

(*compare* R. 122, with R. 289–90).  Given that both Feiden and Reddy's opinions were key to the ALJ's findings regarding Fernandez's residual functional capacity (R. 27–28), additional supporting or detracting evidence could very well have also affected how much weight those experts' opinions received.

Viewing the proffered new evidence in light of the existing record, the Court concludes that there was a "a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently."  *Patterson*, 24 F. Supp. 3d at 372 (brackets omitted).  The Appeals Council's failure to consider the new evidence thus provides an additional basis to remand this case to allow the Commissioner to consider this evidence in the first instance.

## IV.    Conclusion

For the foregoing reasons, Fernandez's motion for judgment on the pleadings is GRANTED, and the Commissioner's motion for judgment on the pleadings is DENIED. Pursuant to 42 U.S.C. § 405(g), the case is remanded to the Commissioner for further proceedings consistent with this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 9 and 13, and to close this case.

SO ORDERED.

Dated: February 19, 2019
        New York, New York

_____
            J. PAUL OETKEN
        United States District Judge